## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EIGHT ONE EIGHT, LLC, dba | ) | |
| FASSLER HALL, and Oklahoma | ) | |
| Limited liability company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 25-cv-0510-CVE-SH |
| vs. | ) | |
| | ) | |
| KELLIE GILMORE, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Respectfully submitted,

 *s/*Ashley F. Vinson
J. Schaad Titus, OBA #9034
Barry R. Reynolds, OBA #13202
Ashley F. Vinson, OBA #34812
**TITUS HILLIS REYNOLDS LOVE**
15 East 5th Street, Suite 3700
Tulsa, Oklahoma  74103
(918) 587-6800   FAX:  (918) 587-6822
stitus@titushillis.com
reynolds@titushillis.com
avinson@titushillis.com
*Attorneys for the Defendant,*
*Kellie Gilmore*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**..................................................................................................................**2**

**I.**   **Allegations of the Amended Complaint** .......................................................**3**

**II.**  **OCPA Tests the Validity of Defamation Claims** ......................................**5**

**III.** **Fassler Fails to Establish a Prima Facie Case** ...........................................**6**

  **A. Fassler cannot show by clear and specific evidence that it can establish a prima facie case of each element of its defamation claim**..............................**10**

   **1.   Falsity** ....................................................................................**11**

   **2.   Opinion**...................................................................................**15**

   **3.   Negligence** .............................................................................**17**

   **4.   Malice** ....................................................................................**17**

  **B. Fassler cannot show by clear and specific evidence that it can establish a prima facie case of tortious interference** .......................................**18**

**CONCLUSION** ................................................................................................................**19**

## **TABLE OF AUTHORITIES**

**CASES**

*Bates v. Cast*
2014 OK CIV APP 8, 316 P.3d 246 .......................................................................... 10

*Crews v. Galvan*
No. 13-19-00110-CV, 2019 WL 5076516, at *4 (Tex. App. Oct. 10, 2019) .................................. 7

*Herbert v. Oklahoma Christian Coalition*
1999 OK 90, 992 P.2d 322; Price v. Walters, 1996 OK 63.918 P.2d 1370 ..................................... 15

*Krimbill v. Talarico*
2018 OK CIV APP 37, 417 P.3d 1240 ............................................................... 6,7,16,18

*Magnusson v. New York Times*
2004 OK 53, 98 P.3d 1070 ..................................................................................... 15

*Martin v. Griffin Television, Inc.*
1976 OK 13, 549 P.2d 85 ......................................................................................... 12

*Metcalf v. KFOR-TV*
828 F. Supp. 1515 (W.D. Okla. 1992) ......................................................................... 15

*Milkovich v. Lorain Journal Co.*
497 U.S. 1 (1990) ................................................................................................... 15

*Miskovsky v. Oklahoma Pub. Co.*
1982 OK 8, 654 P.2d 587. cert. denied. 459 U.S. 923 (1982) ............................................... 14

*Miskovsky v. Tulsa Tribune Co.*
1983 OK 73,1115, 678 P.2d 242, 246 ......................................................................... 12

*Mitchell v. Griffin Television, L.L.C.*
2002 OK CIV APP 115, 60 P.3d 1058 ......................................................................... 10

*Nelson v. Am. Hometown Publ'g, Inc.*
2014 OK CIV APP 57, 333 P.3d 962 ..................................................................... 1,10,17

*Peterson v. Grisham*
594 F.3d 723 (10th Cir. 2010) ................................................................................... 10

*Philadelphia Newspapers, Inc. v. Hepps*
475 U.S. 767 (1986) ............................................................................................... 12

*Provencio v. Paradigm Media, Inc.*
44 S.W.3d 677, 681 (Tex. App. 2001) ........................................................................12

*Rinsley v. Brandt*
700 F.2d 1304 (10th Cir. 1983) ........................................................................... 12,15

*Shoemaker Corp. III, Inc. v. Garrett*
704 F. Supp. 3d 1222, 1242 (N.D. Okla. 2023) ........................................................18

*Southwest Orthopaedic Specialists, PLLC v. Allison*
2018 OK CIV APP 69, 439 P.3d 430 ........................................................................6,

*Tihon v. Capital Cities/ABC Inc.*
905 F. Supp. 1514 (N.D. Okla. 1995) ........................................................................15

*Trice v. Burress*
2006 OK CIV APP 79, 137 P.3d 1253 ........................................................................10

**STATUTES**

12 O.S. § 1430 ...........................................................................................................1,3

12 O.S. § 1431 .......................................................................................................5,7,19

12 O.S. § 1432 ...........................................................................................................5

12 O.S. § 1434 ....................................................................................................4,5,7,19

12 O.S. § 1435 ...........................................................................................................5,6

12 O.S. § 1438 ...........................................................................................................20

12 O.S. § 1444 ...........................................................................................................12

**RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1,4

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EIGHT ONE EIGHT, LLC, dba** | ) | |
| **FASSLER HALL, and Oklahoma** | ) | |
| **Limited liability company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 25-cv-0510-CVE-SH** |
| **vs.** | ) | |
| | ) | |
| **KELLIE GILMORE, an individual,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW, Defendant, Kellie Gilmore ("Gilmore"), and hereby moves to dismiss the claims set forth in the Amended Complaint [Dkt. 8][1] filed by the Plaintiff, Eight One Eight, LLC, dba Fassler Hall, LLC ("Fassler"), pursuant to the Oklahoma Citizens Participation Act ("OCPA"), 12 O.S. § 1430, *et seq.*, and for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). In support thereof, Gilmore states as follows:

---

[1] On November 20, 2025, Fassler moved to amend its Amended Complaint [Dkt. 25] to withdraw its negligence claim. The Court subsequently granted Fassler's request. [Dkt. 26]. Fassler then filed its Second Amended Complaint [Dkt. 27] that same day. This Motion moves to dismiss the allegations and claims in the original Amended Complaint [Dkt. 8]; however, argument on Fassler's negligence claim has been removed as it is now moot due to the filing of the Second Amended Complaint [Dkt. 27]. Previously, though, Fassler's negligence claim would have been subject to dismissal because negligence is the standard of fault that a private figure plaintiff must ultimately prove in a defamation case, but negligence is not an independent tort theory based on publication of a newspaper article." *Nelson v. Am. Hometown Publ'g, Inc.,* 2014 OK CIV APP 57, ¶ 17, 333 P.3d 962, 968. Gilmore reserves the right to reassert this argument in the event Fassler later attempts to plead a negligence cause of action against her.

1

## INTRODUCTION

Gilmore maintains a TikTok account under her pseudonym "Georgia Rose"[2] where she markets herself as a "Plus Size Fashion & Lifestyle" content creator. Many of her posts encourage body positivity, fashion advice, skincare and makeup recommendations. Some of Gilmore's videos also include her opinions on current events, especially those that take place in her home state of Oklahoma. This case involves a video posted by Gilmore to her TikTok account regarding certain events that took place at Fassler.[3]

On August 9, 2025, an incident occurred at Fassler's, a popular Tulsa bar, whereby a female customer, Sarah Jacobs ("Jacobs")[4] reported being groped by a male customer without her consent. Jacobs reported the groping to the Fassler bar manager, who responded by directing Jacobs to inform Fassler security. Jacobs did not see any security nearby, but rather, saw that the man that she claims groped her appeared to be making his way toward the exit. With there being no security in Jacobs's eyesight or view, and having received no aid from the bar manager, Jacobs responded to her perpetrator, threw a drink at him and attempted to hit him. Fassler's security witnessed this interaction between Jacobs and this other male customer. Fassler's head of security then forcefully grabbed Jacobs on various parts of her body, kicked her out of the bar, and prohibited her from reentering.

Jacobs subsequently posted about the attack and Fassler's inappropriate response on her Facebook account. Gilmore, a friend of Jacobs, saw her Facebook post and reached out to Jacobs to express her concern and asked questions about how and what happened. Gilmore subsequently

---

[2] Gilmore's TikTok handle is @georgiarosecurves.

[3] The video can be viewed at the following link: https://www.tiktok.com/t/ZP8UdarQL/ .

[4] Referred to as "female customer" throughout the Amended Complaint.

filed a TikTok video and remitted a draft to Jacobs for review, confirmation of her statements, and approval to post. Jacobs confirmed the truthfulness of the statements in the video and approved Gilmore to proceed with posting. Gilmore then posted the TikTok to warn women of the attack against Jacobs and of Fassler's improper handling of the incident. Jacobs and Gilmore views this as an important matter of public concern for safety and treatment of women.

Fassler, having difficulty identifying Gilmore because of her use of a pseudonym, eventually tracked her down and filed the underlying lawsuit claiming three (3) causes of action: defamation, negligence,[5] and tortious interference.  The latter two are entirely reliant upon the former. These causes of action and the allegations in support thereof are the very type of meritless claims that invoke the disposition under the OCPA to encourage and safeguard people's constitutional rights of persons to speak freely regarding matters of public concern. 12 O.S. 1430(B).

### I.    Allegations of the Amended Complaint

The Amended Complaint alleges on August 9, 2025, Jacobs reported to the bar manager on duty that a male customer had "grabbed [her] buttocks without permission."  At ¶ 7. The manager instructed Jacobs to inform security. *Id.* at ¶ 8. Jacobs then "returned to the man who had allegedly assaulted her, knocked him to the ground, and began punching him." *Id*. at ¶ 9. Security then moved to "break up the fight" and escorted Jacobs "out by her wrist in a professional and appropriate manner." *Id*. at ¶¶ 10–11. Security also escorted the male customer out of the bar and told both customers they could not return. *Id.*

Fassler security then pointed out Tulsa police officers across the street to Jacobs "if she wished to file a complaint, she could do so right then and there." *Id*. at ¶ 12. Jacobs attempted

---

[5] Withdrawn per Fassler's Second Amended Complaint. [Dkt. 27].

reentry to Fassler's later that evening and Fassler security declined. *Id*. at ¶ 12. Jacobs later posted on Facebook about the incident and responded to comments on her post. *Id*. at ¶¶ 14–15.

Gilmore subsequently posted a TikTok video about what happened to Jacobs—her friend— and about how Fassler handled the incident. *Id*. at ¶ 20. The Amended Complaint further alleges that Gilmore "interacted with and indeed incited" outraged commentors who identified Fassler's as a McNellies' group establishment and urged people not to visit McNellies establishments. *Id*. at ¶ 22. In addition, the Amended Complaint states that the "security guard that was falsely accused of assaulting the customer received direct, personal threats." *Id*. at ¶ 24. Gilmore's TikTok does not identify the security guard by name, image, or otherwise.[6] However, his identity became known through other social media posts. *Id*. at ¶ 24. Fassler also avers that "numerous individuals have commented on Gilmore's TikTok video to inform her that her statements were false." *Id*. at ¶ 26.

Fassler's Amended Complaint does not specifically identify which of Gilmore's statements in her TikTok it believes to be defamatory; rather, Fassler blanketly asserts and pleads in the alternative that Gilmore published her TikTok video with negligence or actual malice. *Id*. at ¶ 27. Under either theory or liability, however, Fassler's defamation claim fails because Fassler cannot satisfy the requirement of the OCPA to show by clear and specific evidence that it can make out a *prima facie* case of falsity and defamation. Accordingly, Fassler's defamation cause of action should be dismissed, as well as the tortious interference claim that is entirely based on Gilmore's exercise of her constitutional rights. 12 O.S. § 1434(B)(1); Fed. R. Civ. P. 12(b)(6).

---

[6] https://www.tiktok.com/t/ZP8UdarQL/

## II.    OCPA Tests the Validity of Defamation Claims

The OCPA provides a streamlined mechanism to address the *prima facie* validity of claims such as defamation and tortious interference that are based on a defendant's exercise of his or her constitutional rights. The basic operation of the law is straightforward: It allows a defendant to seek early dismissal of a "legal action"[7] that "is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition, or right of association." OCPA § 1432(A).[8]

When a defendant files an OCPA motion to dismiss, the "court *shall* dismiss a legal action" if "the [defendant] shows by a *preponderance of the evidence* that the legal action is based on, relates to, or is in response to the [defendant's] exercise" of speech, associational, or petition rights. OCPA § 1434(B) (emphasis added). If the defendant makes that showing, the burden then shifts to the plaintiff, and the "court shall not dismiss the action" only, if the plaintiff "establishes by *clear and specific evidence a prima facie case for each essential element of the claim in question."* OCPA § 1434(C) (emphasis added). Further, even if the plaintiff makes the *prima facie* showing under subsection (C), the "court *shall* dismiss a legal action" if the defendant "establishes by a *preponderance of the evidence each essential element of a valid defense* to the [plaintiffs] claim." OCPA § 1434(D) (emphasis added). In deciding the OCPA motion, the court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." OCPA § 1435(A).

---

[7] The OCPA defines a "legal action" as a "lawsuit, cause of action, petition, complaint, cross-claim, counterclaim or any other judicial pleading or filing that requests legal or equitable relief. OCPA § 1431(6).

[8] Those rights are defined in OCPA § 1431(2)-(4). Of relevance here, the "exercise of the right of free speech" means "a communication made in connection with a matter of public concern." OCPA § 1431(3). A "matter of public concern" is defined in turn as "an issue related to," among other things, "health or safety." OCPA § 1431(7)(a).

The Oklahoma Court of Civil Appeals elaborated on how the court "consider[s] the pleadings and supporting and opposing affidavits stating the facts" as dictated by OCPA § 1435 in *Southwest Orthopaedic Specialists, PLLC v. Allison,* 2018 OK CIV APP 69, 439 P.3d 430; and *Krimbill v. Talarico,* 2018 OK CIV APP 37, 417 P.3d 1240, *reh. denied* (Dec. 20, 2017), *cert. denied* (Apr. 10, 2018). Those cases say that factual allegations in the pleadings are accepted as true unless controverted by an affidavit or documentary evidence; that is, uncontroverted affidavits or documentary evidence negate allegations to the contrary, and the court need not accept those allegations as true.[9] If the plaintiff submits admissible evidence in the form of an affidavit, the Court construes that evidence in a light most favorable to the plaintiff. The defendant may submit affidavits to controvert an allegation in the petition or to show facts not addressed in the plaintiff's petition or affidavits. The Court is not permitted to weigh the evidence; but the Court may treat as true any material fact established by the defendant's affidavits that is not genuinely disputed by the plaintiff's affidavits. If the accepted allegations of the petition and the uncontroverted evidence submitted by the parties show clearly and specifically that the plaintiff has made out a *prima facie* case, the motion to dismiss is denied. If the plaintiff fails to make that clear and specific showing, or if the defendant establishes a defense to the claim by a preponderance of the uncontroverted evidence, then the motion is granted.

## III.    Fassler Fails to Establish a Prima Facie Case

Fassler's Amended Complaint concerns Gilmore's TiktTok video wherein she describes Jacobs's report of the attack against her and Fassler's inappropriate handling of the incident, as

---

[9] *Krimbill* at *¶ 19* observed that the pleadings, even if accepted as true, may not be sufficient themselves to meet the clear and specific evidence burden imposed by the OCPA. And *Southwest Orthopaedic Specialists* at ¶ 19 said that something more fact-intensive than general allegations that required elements exist should be necessary to show a *prima facie* case pursuant to the OCPA.

well as Gilmore's impressions therefrom. The underlying lawsuit asserts two (2) speech-based torts all of which are based upon, relate to or is in response to" Gilmore's exercise of free speech. 12 O.S. § 1434(B)(1). Free speech means communication made in connection with a matter of public concern, such as issues relating to health or safety. *Id*. at § 1431(3), (7)(a). Statements about alleged crimes are matters of public concern as they relate to safety, health, and well-being of the community. *Crews v. Galvan,* No. 13-19-00110-CV, 2019 WL 5076516, at *4 (Tex. App. Oct. 10, 2019).[10]

Gilmore's TikTok video is an exercise of her constitutional right to free speech to forewarn the public of alleged crimes occurring at a popular bar—Fassler—and its handling of allegations of this sort and the treatment of those customers who report alleged crimes. 12 O.S. § 1431(3), (7)(a). Specifically, Gilmore's TikTok video forewarns women in the Tulsa community of an alleged sexually motivated crime at a crowded bar women frequent, and Fassler's improper response following the report. Indeed, discussing incidents of public safety concerns, such as reports of sexual assault and how establishments respond to them, is crucial to raising awareness and promoting community well-being. 12 O.S. § 1431(3), (7)(a). Sharing personal experiences and observations about safety issues helps inform others and encourages responsible responses from businesses. These conversations are an important part of public dialogue, enabling communities to stay informed and vigilant about potential risks in social settings. Thus, Gilmore has met her initial OCPA § 1434(B) burden to demonstrate applicability of the OCPA in this case.

---

[10] Oklahoma courts have found Texas decisional law is persuasive authority on Anti-SLAPP matters because Oklahoma's OCPA mirrors the Texas Citizens' Participation   Act ("TCPA"). *Krimbill,* 2018 OK CIV APP 37, ¶ 5, 417 P.3d at 1244.

The burden now shifts to Fassler to make a clear and specific showing of the *prima facie* validity of its case, a burden it cannot meet. Because in deciding an OCPA motion, the court is required to consider the facts affirmatively shown by affidavits, Gilmore submits the following affidavit supported facts:[11]

1.      In the early morning of August 9, 2025, Jacobs posted on Facebook: Some guy reached up my skirt and touched by pvssy at Fassler Hall and because I shove his drink in his face I got kicked out and now allowed back. FVCK YOU FASSLER. *See* Jacobs Aff., Ex. **1** at ¶ 13; Gilmore Aff., Ex. **2**, at ¶ 1.

2.      Gilmore, a friend of Jacobs, saw her Facebook post and immediately contacted Jacobs out of concern for her friend's safety and well-being and outrage after learning of Jacobs's recount of the way Fassler handled the situation. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 2.

3.      Gilmore believed Ms. Jacobs account of the attack by the male customer and how Fassler handled the situation because she believes Jacobs to be a truthful and reliable person. *See* Gilmore Aff., Ex. **2**, at ¶ 6.

4.      Moreover, Gilmore was aware of Fassler's reputation of hosting unruly customers, as well as Fassler's security treating customers with disrespect. *See* Gilmore Aff., Ex. **2**, at ¶ 7. Indeed, a simple google search reflects a variety of alleged crimes occurring at Fassler.[12]

---

[11] These facts are supported by the affidavits of Sarah Elizabeth Jacobs, attached as Exhibit 1 ("Jacobs Aff., Ex. **1**), as well as Kellie Gilomore, attached as Exhibit 2 (Gilmore Aff., Ex. **2**). Gilmore reserves the right to submit additional affidavit evidence and arguments to counter whatever Fassler may present by way of response to this motion, including any discovery obtained on a limited basis pursuant to court order or otherwise. The following argument is merely a preview of some of the reasons Fassler's *prima facie* showing will fail.

[12] *Police investigate downtown Tulsa stabbing*, Fox23 News (Nov. 17, 2025), https://www.fox23.com/news/police-investigate-downtown-tulsa-stabbing/article_19a5f9d9-

5.      Based upon Jacobs's Facebook post, Gilmore desired to make a TikTok video about Jacobs's recount of the incident at Fassler's because it concerns women's safety in public spaces and how establishments respond to reports of sexual related crimes against women. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 3.

6.      Gilmore asked Jacobs for her permission to post a TikTok video about the incident and informed her of the purpose of the video. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 3.

7.      Gilmore asked Jacobs additional follow up questions concerning whether Fassler did any investigation into Jacobs's report of the attack, including whether Fassler banned the alleged attacker. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 5.

8.      Gilmore then sent a draft of the TikTok video to Jacobs to ensure that the statements therein were accurate before she posted the video. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 8.

9.      Jacobs watched the draft video Gilmore sent to her and confirmed the accuracy of Gilmore's statements therein based upon her personal knowledge and experience. *See* Jacobs Aff., Ex. **1** at ¶ 14; Gilmore Aff., Ex. **2**, at ¶ 9.

10.      After Gilmore posted the TikTok video to her account, several TikTok users who purported having witnessed the attack on Ms. Jacobs and Fassler's handling of the situation commented on her post as well as other news sources' postings about the incident. *See* Gilmore Aff., Ex. **2**, at ¶¶ 10, 11.

---

d702-499c-9998-1991cd709b05.html; Savannah Sinclair, *Tulsa police respond to early morning shooting outside Fassler Hall*, NEWS CHANNEL 8, (Aug, 15, 2023) https://ktul.com/news/local/tulsa-police-respond-to-early-morning-shooting-outside-fassler-hall.

11.    Several other TikTok users commented under Gilmore's video about Fassler's reputation and how its security treats customers, stating that they or someone they knew experienced something like Jacobs situation.  *See* Gilmore Aff., Ex. **2**, at ¶ 15.

12.    2News Oklahoma posted on its own TikTok page "@2newsoklahoma" about the incident, which has since been taken down or removed. *See* Gilmore Aff., Ex. **2**, at ¶ 13. Under 2News Oklahoma's post a user by the handle @turk4087 commented: "I was there. He had one hand on her arm and the other on her neck. People like you are why women don't report. You were there and I was there. You saw one thing I saw another. Your statement is damaging just because you weren't paying attention." *Id.*

13.    Jacobs, who uses the pseudonym "Scarlett James" on TikTok, commented on Gilmore's TikTok video, confirming its truthfulness. *See* Gilmore Aff., Ex. **2**, at ¶ 14.

Given these facts, as explained below, Fassler cannot establish a *prima facie* case for each essential element of its defamation, negligence, and tortious interference claim.

### A.  Fassler cannot show by clear and specific evidence that it can establish a *prima facie* case of each element of its defamation claim.

In order to make a claim for defamation, including slander as plead herein, the plaintiff must allege and prove (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. *See, e.g., Peterson v. Grisham,* 594 F.3d 723 (10th Cir. 2010) (applying Oklahoma law); *Nelson,* 2014 OK CIV APP 57, 333 P.3d 962; *Bates v. Cast,* 2014 OK CIV APP 8, 316 P.3d 246; *Trice v. Burress,* 2006 OK CIV APP 79, 137 P.3d 1253; *Mitchell v. Griffin Television, L.L.C.,* 2002 OK CIV APP 115, 60 P.3d 1058; *see also* OUR Nos. 28.2-28.3.

The Amended Complaint does not identify exactly which of Gilmore's statements Fassler alleges are substantially and materially false and defamatory. *See generally,* Amended Complaint. Fassler seemingly takes issue with the Gilmore's TikTok video statements in paragraph 20 since those are the only statements that Fassler explicitly references in its Amended Complaint. Those statements in paragraph 20 of the Amended Complaint are as follows:

- "If you're a woman in Tulsa and you've ever gone to this bar downtown, you need to know that you are not safe there. You are not safe there. Your friends are not safe there."

- "Last night, one of my friends was at the bar having a great time—it is one of our favorite bars, I go there every time I go home to visit—and this man, she does not [explicit] know, reaches up under her skirt and touches her genitals. That is S-A. That is purely S-A, there is no debating it. And so, she turns around and throws his drink in his face and starts yelling at him. And you know what happens? They drug her out there by her throat. By her throat."

- "You know what security told her? They said since you were involved in the altercation, you're at fault too and you're not allowed back in. So I just want to know that if you're a woman and you go to Fassler Hall and you get S-A'd on the dance floor and you stick up for yourself, you're not only gonna get kicked out, security isn't gonna help you, security isn't gonna believe you, and they'll probably let the predator back in the bar the next night."

- "Do not let these men get away with this shit. And do not spend money at establishments that do not care about women."

- "And this is exactly the type of environment that Oklahoma is for women. And nobody fucking cares. The men don't believe us. Nobody fucking cares."

- "So, if you're a woman, don't go to Fassler Hall. Just don't go to Fassler Hall, you guys. Don't spend money there, don't fucking go there. You will get assaulted, and nobody will fucking care. Welcome to Tulsa."

These statements are either true and/ or reflect Gilmore's opinion, thus Fassler cannot satisfy the first element of its defamation claim.

### 1.    *Falsity*

As a matter of law, to sustain a defamation claim, a plaintiff must prove that a defamatory statement of fact about him is **substantially and materially false**. That is, to be actionable, a

news article must contain a statement of fact that is demonstrably false. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767 (1986); *Rinsley v. Brandt,* 700 F.2d 1304, 1307 (10th Cir. 1983); *Miskovsky v. Tulsa Tribune Co.,* 1983 OK 73,1115, 678 P.2d 242, 246. Stated simply, a substantially true statement of fact is not actionable. *Martin v. Griffin Television, Inc.,* 1976 OK 13, 549 P.2d 85; Okla. Stat. tit. 12, § 1444.1. A statement is considered "substantially true" if, in the mind of the average person who reads or hears the statement, it is not more damaging to the plaintiff's reputation than a truthful statement would have been. *Provencio v. Paradigm Media, Inc.,* 44 S.W.3d 677, 681 (Tex. App. 2001). Conversely, a statement is not "substantially true" if it in more damaging to the plaintiff's reputation than a truthful statement. *Id.* at 681. Courts must consider the "gist" of the alleged defamatory statement when determining whether it is substantially true. *Id.* If the underlying facts related to the "gist" are undisputed, courts may disregard any variance with respect to items of secondary importance to determine substantial truth. *Id.*

The following statements by Gilmore in her Tiktok video constitute an undisputed fact or the substantial truth and are therefore not defamatory:

- "Last night, one of my friends was at the bar having a great time—it is one of our favorite bars, I go there every time I go home to visit—and this man, she does not [explicit] know, reaches up under her skirt and touches her genitals. And so, she turns around and throws his drink in his face and starts yelling at him. And you know what happens? They drug her out there by her throat. By her throat."

The former half of the first sentence is complimentary, not defamatory. The remainder of Gilmore's statement is substantially true and not actionable as defamation. The Amended Complaint admits that Jacobs reported having been groped underneath her dress without her consent by a male customer. At ¶ 7. Jacobs posted about the nonconsensual groping on Facebook and confirmed Gilmore's statement reiterating the same before Gilmore posted her TikTok.

Jacobs Aff., Ex. **1**, at ¶¶ 13–14; Gilmore Aff., Ex. **2**, at ¶¶ 1, 3, 4–5, 8–9. Gilmore's TikTok video confirms much of Jacobs statement to Gilmore. Gilmore Aff., Ex. **2**, at ¶ 10.

Fassler's then asserts that Jacobs knocked her alleged assailant to the ground and punched him. Amended Complaint at ¶ 9. Gilmore's statement reflects what Jacobs published and told her which is that Jacobs pushed a drink toward her perpetrator and proceeded to attempt to hit him but does not recall whether her hands contacted his person. Jacobs Aff., Ex. **1** at ¶¶ 4, 14; Gilmore Aff., Ex. **2**, at ¶¶ 1–5, 8–9. Gilmore's statement is substantially true—the bottom line is that Jacobs engaged the male customer who she claims groped her. Amended Complaint at ¶ 9; Jacobs Aff., Ex. **1**, at ¶¶ 4, 14; Gilmore Aff., Ex. **2**, at ¶¶ 1–5, 8–9.

The final sentence "[Fassler] drug her out there by her throat. By her throat" is also substantially true. The Amended Complaint contends that Fassler security "escorted [Jacobs] out by her wrist in a profession and appropriate manner." At ¶ 3. However, Jacobs's Facebook post and her conversation with Gilmore reveals that Fassler security forcefully grabbed Jacobs and removed her from the bar. Jacobs Aff., Ex. **1**, at ¶¶ 5–6, 14; Gilmore Aff., Ex. **2**, at ¶¶ 1–5, 8–9; Amended Complaint at ¶ 14 ("security threw me out by holding my neck"). Before Gilmore posted her TikTok video making this statement, she confirmed the truthfulness of the statement with Jacobs. Jacobs Aff., Ex. **1**, at ¶¶ 5–6, 14; Gilmore Aff., Ex. **2**, at ¶¶ 3–5, 8–10; In addition to being grabbed by her neck, Fassler security also grabbed Jacobs's arm with excessive force causing substantial bruising. Jacobs Aff., Ex. 1, at ¶¶ 5–6. Whether Fassler grabbed Jacobs by the throat, neck, shoulder, arm, leg, wrist, the result is the same—the truth is that excessive force was used to expel Jacobs out of the bar shortly after she reported an attack.

- "You know what security told her? They said since you were involved in the altercation, you're at fault too and you're not allowed back in. So I just want to know that if you're a woman and you go to Fassler Hall and you get S-A'd

on the dance floor and you stick up for yourself, you're not only gonna get kicked out, security isn't gonna help you, security isn't gonna believe you, … ."

Thie gist of this statement is substantially true and therefore not defamatory. Fassler security kicked Jacobs out of the bar shortly after she reported being groped by a male customer. Amended Complaint at ¶¶ 10–12 ("security then moved in to …escort the customers directly involved in the fight out of Fassler Hall"); Jacobs Aff., Ex. **1**, at ¶¶ 2–7; Gilmore Aff., Ex. 2, at ¶¶ 1–10. Gilmore's statement that Fassler prohibited Jacobs's reentry since she was at fault too was exactly what Jacobs told Gilmore and exactly what Jacobs confirmed upon her review of Gilmore's TikTok video. Amended Complaint at ¶ 14; Jacobs Aff., Ex. **1**, at ¶¶ 2–7; Gilmore Aff., Ex. 2, at ¶¶ 1–10.

The remainder of Gilmore's statement is also substantially true in that Jacobs reported to Fassler management a sexual assault on her person (Amended Complaint at ¶ 7; Jacobs Aff., Ex. **1**, at ¶ 3); the bar manager did not alert security or otherwise investigate, rather, Jacobs was told to inform security (Amended Complaint at ¶ 8; Jacobs Aff., Ex. **1**, at ¶ 3); Jacobs responded to the male customer that she claimed groped her (Amended Complaint at ¶ 9; Jacobs Aff., Ex. **1**, at ¶ 4); Fassler security did kick Jacobs out (Amended Complaint at ¶¶ 10-11; Jacobs Aff., Ex. **1**, at ¶¶ 5, 7); Fassler security did not otherwise aid Jacobs (Amended Complaint at ¶ 12; Jacobs Aff., Ex. **1**, at ¶¶ 7–8).

Gilmore's statement about security not believing reports about "[sexual assault]" is also substantially true. The events that took place surround this statement are the "gist" that make it substantially true. If Fassler believed Jacobs that night the bar manager would have stopped making drinks and investigated further, but instead she told Jacobs to inform security. Amended Complaint at ¶ 8.  After Jacobs responded against her perpetrator, Fassler security manhandled

14

and kicked her out without investigating a report of a serious crime. Jacobs Aff., Ex. **1**, at ¶¶ 5–8. At that point, Fassler did not alert management, or flag down the police who were right across the street, but, instead, threatened Jacobs that they would alert police if she did not calm down. Jacobs Aff., Ex. **1**, at ¶ 8. Later, Fassler reported it but that focused on Jacobs and not the man who caused the altercation.[13]

Fassler has not shown that any statement above is substantially and materially false. Therefore, its defamation claim should be dismissed.

### 2. Opinion

In addition, a plaintiff cannot make a *prima facie* showing of the first element of its defamation claim if the alleged defamatory statement is an opinion. Statements which are judgmental, opinionative, or predictive in nature are not actionable as defamation because they are not verifiable as being either true or false. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990); *Rinsley,* 700 F.2d at 1309; *Tihon v. Capital Cities/ABC Inc.,* 905 F. Supp. 1514 (N.D. Okla. 1995), *aff'd,* 95 F.3d 32 (10th Cir. 1996), *cert. denied,* 519 U.S. 1110 (1997); *Metcalf v. KFOR-TV,* 828 F. Supp. 1515 (W.D. Okla. 1992); *Magnusson v. New York Times,* 2004 OK 53, ¶ 13, 98 P.3d 1070; *Herbert v. Oklahoma Christian Coalition,* 1999 OK 90, 992 P.2d 322; *Price v. Walters,* 1996 OK 63.918 P.2d 1370; RESTATEMENT (SECOND) OF TORTS, § 566.

In particular, "statements of pure opinion—based on stated facts or on facts known by the parties or assumed by them to exist—as a matter of constitutional law enjoy absolute immunity protected both by the First Amendment and by art. 2, § 22 of the Oklahoma Constitution." *Magnusson*, 2004 OK 53, ¶ 13, 98 P.3d at 1076. If the defendant expresses a derogatory opinion

---

[13] Devyn Lyon, *Fassler Hall files police report after security guards receive death threats*, Fox 23 News, (Aug. 15, 2025), https://www.fox23.com/news/fassler-hall-files-police-report-after-security-guards-receive-death-threats/article_b6b80f2b-76f2-44d3-a16f-3352cfce70ac.html.

without disclosing the facts on which it is based, there may be liability "if the comment creates the reasonable inference that the opinion is justified by the existence of unexpressed defamatory facts." *Krimbill,* 2018 OK CIV APP 37, ¶ 70, 417 P.3d at 1255–56.

Here, the following statements by Gilmore in her TikTok video constitute her opinion and are therefore not defamatory:

- "If you're a woman in Tulsa and you've ever gone to this bar downtown, you need to know that you are not safe there. You are not safe there. Your friends are not safe there."

- "That is S-A. That is purely S-A, there is no debating it."

- "Do not let these men get away with this shit. And do not spend money at establishments that do not care about women."

- "And this is exactly the type of environment that Oklahoma is for women. And nobody fucking cares. The men don't believe us. Nobody fucking cares."

- "So, if you're a woman, don't go to Fassler Hall. Just don't go to Fassler Hall, you guys. Don't spend money there, don't fucking go there. You will get assaulted, and nobody will fucking care. Welcome to Tulsa."

- "… and they'll probably let the predator back in the bar the next night."

Each of the above statements are Gilmore's opinions based on or accompanied by facts known to her as stated, reviewed, confirmed and approved of by Jacobs who has firsthand knowledge of the facts. *See* Jacobs Aff., Ex. **1**; Gilmore Aff., Ex. **2**. Whether the average person would perceive Fassler to be a safe place, particularly for women, is a matter of opinion. Listeners are free to make that inference. Further, Gilmore's statements are predictive and therefore her opinion when she states that women will get assaulted at Fassler and nobody will care is entirely based upon the facts she believed to be true told and confirmed by Jacobs—a person Gilmore deemed honest and credible. Gilmore Aff., Ex. 2, at ¶ 6.

16

### 3.     *Negligence*

The Amended Complaint pleads defamation under two alternative theories of liability: negligence and malice. Both theories of liability fail. Negligence, the third element of defamation, is the standard of fault that a private figure plaintiff must prove. *Nelson*, ¶ 17, 333 P.3d at 968. Negligence in the context of a defamation claim under Oklahoma law is defined as the failure to exercise ordinary care, which is the degree of care that ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances. To prove negligence in a defamation claim, a private-figure plaintiff must demonstrate that the defendant acted negligently in failing to ascertain the truth or falsity of the alleged defamatory statement. This standard is distinct from the higher "actual malice" standard required for public figures or officials, which involves knowledge of falsity or reckless disregard for the truth.

Here, Fassler cannot establish that Gilmore acted negligently when she posted her TikTok video because she exercised ordinary care that a person in her similar position would have proffered before she posted her TikTok video. That is, Gilmore learned of the incident at Fassler's through Jacobs Facebook post. Gilmore Aff., Ex. **2**, at ¶ 1. Gilmore then communicated with Jacobs about the incident and requested approval to post a video about what happened to Jacobs. Gilmore Aff., Ex. **2**, at ¶¶ 2–5. Jacobs approved and Gilmore sent a draft of the TikTok video to Jacobs for her review so that she could confirm its accuracy before Gilmore posted. Gilmore Aff., Ex. **2**, at ¶ 8. Jacobs reviewed, approved and confirmed the accuracy of Gilmore's statements in her video. Jacobs Aff., Ex. **1**, at ¶ 14;Gilmore Aff., Ex. **2**, at ¶ 9.

### 4.     *Malice*

The actual malice theory of liability and the third element under defamation claims is only applicable where the plaintiff is a public figure. Malice requires proof that a defendant acted with

knowledge that a publication was false "or with reckless disregard of whether it was false or not." Krimbill, 2018 OK CIV APP 37, ¶ 56, 417 P.3d at 1253. Malice is decided by a subjective standard that focuses on the defendants' state of mind, knowledge, and intent. Id. at 58. Mere allegations of negligence by defendant is not enough. *Id*. at ¶ 57, 417 P.3d at 1253. Rather, the plaintiff must establish that the defendant had entertained serious doubts as to the truth of his statement(s) or had a high degree of awareness of the probable falsity of the published information. *Id*. (citation omitted). When a defendant's words are reasonably subject to more than one interpretation, the plaintiff must establish either that the defendant knew the words would convey a defamatory message or had reckless disregard for their effect. *Id.*

Presently, Fassler claims it is not a public figure, therefore, the actual malice requirement is not applicable. Even if it was, Fassler cannot show Gilmore acted with malice because her statements were substantially true and/or opinions as they were based upon Jacobs's recount of her report of the alleged groping and Fassler's improper response following her report. It is not just the case that Gilmore saw Jacobs public Facebook post about what occurred and did not do any investigation before posting her TikTok. But rather, Gilmore saw the post, investigated and confirmed the truthfulness of Jacobs statements with Jacobs before posting her TikTok.

### B. Fassler cannot show by clear and specific evidence that it can establish a prima facie case of tortious interference.

The elements of a claim for tortious interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference. *Shoemaker Corp. III, Inc. v. Garrett,* 704 F. Supp. 3d 1222, 1242 (N.D. Okla. 2023). The element of malice, for tortious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse. *Id.*

Fassler cannot establish a *prima facie* showing tortious interference for the reason it cannot show Gilmore interfered with an (i) existing business or contractual right and (ii) that Gilmore acted with malice. Bars, like Fassler, naturally operate with constantly shifting, unpredictable customers. That reality does **not** create—nor can it reasonably be portrayed as—any protectable business or contractual right. Fassler cannot reasonably predict how many customers will walk through the door on any given night, much less whether any of them will buy a single drink—let alone multiple drinks. Therefore, it cannot be said that Fassler has an existing, or even potential, business or contractual right for Gilmore to have interfered. Therefore, the first element of Fassler's prima facie case of tortious interference fails.

In addition, for the same reasons Fassler cannot make out a clear and specific *prima facie* case of defamation—no demonstrably false statements of fact about Fassler, and no evidence of negligence or actual malice by Gilmore—Fassler cannot make out a *prima facie* case of tortious interference.

## CONCLUSION

Gilmore's TikTok video is protected speech under the OCPA because it addressed a matter of public concern—safety, particularly women's safety in public spaces—by warning the community about a reported sexual assault at a popular Tulsa bar and the establishment's handling of that report. 12 O.S. §§ 1431(3), (7)(a), 1434(B)(1). Her statements either were substantially true—reflecting Jacobs's report that a man reached under her skirt and touched her genitals; that security expelled her after she responded to her attacker; and that security used force including grabbing her by the neck and arms—or were nonactionable opinions and value judgments about safety and how women are treated, rendered in the context of disclosed facts. The Amended

Complaint fails to identify any specific false, defamatory factual statement, and the record shows the "gist" of the video is true or constitutionally protected opinion.

Nor can Fassler establish fault. Gilmore exercised ordinary care: she saw Jacobs's first-hand account, contacted her, asked follow-up questions, prepared a draft video, and had Jacobs review, confirm, and approve the statements before posting—defeating any claim of negligence and precluding any inference of actual malice. Because the speech is protected and Fassler cannot make a clear and specific *prima facie* showing on falsity or fault, its defamation claim fails, and the derivative negligence and tortious interference claims must be dismissed as well under the OCPA and Rule 12(b)(6). The Court should grant the motion and dismiss the Amended Complaint[14] in its entirety, and grant Gilmore her attorneys' fees and costs pursuant to 12 O.S. § 1438(A)(1) and sanction Fassler pursuant to § 1438(A)(2).

Respectfully submitted,

 *s/*Ashley F. Vinson
J. Schaad Titus, OBA #9034
Barry R. Reynolds, OBA #13202
Ashley F. Vinson, OBA #34812
TITUS HILLIS REYNOLDS LOVE
15 East 5th Street, Suite 3700
Tulsa, Oklahoma  74103
(918) 587-6800  FAX:  (918) 587-6822
stitus@titushillis.com
reynolds@titushillis.com
avinson@titushillis.com
*Attorneys for the Defendant,*
*Kellie Gilmore*

---

[14] Including the Second Amended Complaint since the allegations and claims are the same except for the negligence cause of action.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of November, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

John M. Hickey
jhickey@hallestill.com

Tyler A. Stephens
tstephens@hallestill.com

  s/Ashley F. Vinson                     
Ashley F. Vinson
