**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EIGHT ONE EIGHT, LLC, dba** | ) | |
| **FASSLER HALL, an Oklahoma** | ) | |
| **limited liability company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 25-cv-00510-CVE-SH** |
| **vs.** | ) | |
| | ) | |
| **KELLIE GILMORE, an individual,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Respectfully submitted,

*s/*Taylor K. Pepperworth
J. Schaad Titus, OBA #9034
Barry R. Reynolds, OBA #13202
Ashley F. Vinson, OBA #34812
Taylor K. Pepperworth, OBA #36747
**TITUS HILLIS REYNOLDS LOVE**
15 East 5th Street, Suite 3700
Tulsa, Oklahoma  74103
 (918) 587-6800   FAX:  (918) 587-6822
stitus@titushillis.com
reynolds@titushillis.com
avinson@titushillis.com
tpepperworth@titushillis.com
*Attorneys for the Defendant,*
*Kellie Gilmore*

i

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

ARGUMENT........................................................................................................................3

   I.    THE OCPA WARRANTS DISMISSAL OF FASSLER'S CLAIMS ..........................3

      A.  THE APPLICABILITY OF THE OCPA IN FEDERAL COURT ........................3

         i.     *Shady Grove* created a circuit split on anti-SLAPP applicability in federal court...3

         ii.    The Tenth Circuit applies Justice Stevens' *Shady Grove* test .................................5

         iii.   Most courts in the Tenth Circuit apply state anti-SLAPP laws ..............................6

      B.  Fassler relies on inapposite cases and misapplies § 1439(2) in support of its argument that the OCPA does not apply in federal court ......................................7

   II.   FASSLER'S CLAIMS FAIL UNDER THE OCPA .......................................................8

      A.  Fassler fails to meet its burden of establishing a prima facie case ..........................9

        i.     False statement ....................................................................................................9

           a.  Gilmore's statements are substantially true ........................................................9

           b.  Fassler's claim still fails, regardless of any purported omissions by Gilmore ...................................................................................................................11

           c.  Most of Gilmore's statements in her TikTok Video are opinions .................12

        ii.    Negligence and/or malice .................................................................................15

      B.  Gilmore has established a valid defense by a preponderance of the evidence ....18

III.   FASSLER'S DUPLICATIVE TORT CLAIMS SHOULD BE DISMISSED ...........19

CONCLUSION ....................................................................................................................20

CERTIFICATE OF SERVICE .............................................................................................21

## TABLE OF AUTHORITIES

CASES

*Abbas v. Foreign Policy Group, LLC*
783 F.3d 1328 (D.C. Cir. 2015) ..................................................................................4,7

*Allen v. IM Sols., LLC*
94 F. Supp. 3d 1216 (E.D. Okla. 2015) .........................................................................19

*Autry v. Acosta, Inc.*
2018 OK CIV APP 8, ¶ 32, 410 P.3d 1017 ...................................................................19

*Barnett v. Hall, Estill, Hardwick, Gable & Nelson, P.C.*
956 F.3d 1228 (10th Cir. 2020) ...............................................................................4,6,7

*Bradford Sec. Processing Servs. Inc. v. Plaza Bank & Trust*
1982 OK 96, ¶ 10, 653 P.2d 188, 191) .........................................................................15

*Brokers' Choice of Am. v. NBC Universal*
861 F.3d 1081 (10th Cir. 2017) .............................................................................3,9,11

*Carbone v. Cable News Network, Inc.*
910 F.3d 1345 (11th Cir. 2018) .....................................................................................4

*Clifford v. Trump*
818 F. App'x 746 (9th Cir. 2020) .............................................................................4,6,8

*Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*
No. CIV-17-003-F, 2018 WL 4861522 (W.D. Okla. Apr. 30, 2018) ...........................5,6

*Ferlauto v. Hamsher*
74 Cal. App. 4th 1394 (1999) .......................................................................................13

*Gallegly v. Cordell Mem'l Hosp. Found.*
No. CIV-22-817-R, 2022 WL 16936049 (W.D. Okla. Nov. 14, 2022).............................6

*Gillespie v. Dentsply Sirona, Inc.*
No. 23-CV-00395-SEH-CDL, 2025 WL 2901891 (N.D. Okla. Oct. 10, 2025).................1

*Godin v. Schencks*
629 F.3d 79 (1st Cir. 2010) ....................................................................................4,5

*Harte-Hanks Commc'ns, Inc. v. Connaughton*
491 U.S. 657, 688 (1989) ...........................................................................................16

*Hogan v. Winder*
762 F.3d 1096 (10th Cir. 2014) .................................................................................3

*James River Ins. Co. v. Rapid Funding, LLC*
658 F.3d 1207 (10th Cir. 2011) .................................................................................5

*Jankovic v. Int'l Crisis Grp.*
822 F.3d 576 (D.C. Cir. 2016) ..................................................................................15

*KLX Energy Servs., LLC v. Magnesium Mach., LLC*
521 F. Supp. 3d 1124 (W.D. Okla. 2021) .................................................................6,8

*Klocke v. Watson*
936 F.3d 240 (5th Cir. 2019) ....................................................................................4,7

*Krimbill v. Talarico*
417 P.3d 1240 (Okla. Civ. App. 2017) ...............................................................1,16,18

*La Liberte v. Reid*
966 F.3d 79 (2d Cir. 2020) .........................................................................................4

*Lichfield v. Kubler*
No. 2:24-CV-00458-JNP-CMR, 2025 WL 2772468 (D. Utah Sept. 29, 2025) .................4,7,13,19

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*
885 F.3d 659 (10th Cir. 2018) ...................................................................................7

*Loven v. Church Mut. Ins. Co.*
2019 OK 68, 452 P.3d 418...........................................................................................20

*Magnusson v. New York Times*
2004 OK 53, 98 P.3d 1076............................................................................................3,12

*Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*
810 F.3d 1161 (10th Cir. 2016) ..................................................................................3

*McGhee v. Newspaper Holdings, Inc.*

2005 OK CIV APP 41, 115 P.3d 896 ................................................................................9,10,18

*Milkovich v. Lorain Journal Co.*

497 U.S. 1 (1990)...................................................................................................................12,14

*Nelson v. Am. Hometown Publ'g, Inc.,*

2014 OK CIV APP 57, ¶ 40, 333 P.3d 962 ................................................................................15

*Nunes v. Rushton*

299 F. Supp. 3d 1216 (D. Utah 2018)...................................................................................13,14

*Peterson v. Grisham*

2008 WL 4363653 (E.D. Okla. Sept. 17, 2008), aff'd, 594 F.3d 723 (10th Cir. 2010) ...........12,13

*Present v. Avon Prods., Inc.*

253 A.D.2d 183, 687 N.Y.S.2d 330 (1999) ..............................................................................18

*Rinsley v. Brandt*

700 F.2d 1304 (10th Cir. 1983) ...............................................................................................12

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*

559 U.S. 393 (2010)............................................................................................................3,4,5,7

*Shaw v. United States*

892 F. Supp. 1265, 1275, n. 14 (D.S.D. 1995), aff'd, 92 F.3d 1189 (8th Cir. 1996) ......................2

*SSS Fence, LLC v. Pendleton*

2023 OK CIV APP 11, 528 P.3d 304 .................................................................................11,12,14

*Sullivan v. Unified Sch. Dist. No. 512, Johnson Cnty., Kansas*

No. 24-2491-DDC-BGS, 2025 WL 2732589, at *20 (D. Kan. Sept. 25, 2025) .........................4,7

*Sw. Orthopaedic Specialists, P.L.L.C. v. Allison*

2018 OK CIV APP 69, 439 P.3d 430 .........................................................................................8

*Tilton v. Capital Cities/ABC Inc.*

905 F. Supp. 1514 (N.D. Okla. 1995), aff'd, 95 F.3d 32 (10th Cir. 1996), cert. denied, 519 U.S. 1110 (1997)...........................................................................................................................11,12

*Travelers Cas. Ins. Co. of Am. v. Hirsh*

831 F.3d 1179 (9th Cir. 2016) ...................................................................................8

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*

190 F.3d 963 (9th Cir. 1999) .................................................................................4,8

*Watson v. Mulcahy*

No. 24-CV-02606-GPG-NRN, 2025 WL 2099991 (D. Colo. Jan. 31, 2025) ...........4,7

*Westmont Residential LLC v. Buttars*

014 UT App 291, 340 P.3d 183 ...............................................................................14

*Westwin Elements, Inc. v. CVMR Corp.*

No. CIV-25-19-D (W.D. Okla. 2025).........................................................................6

*Yates v. Gannett Co.*

2022 OK CIV APP 41, 523 P.3d 69 ...........................................................................9

STATUTES & RULES

12 O.S. § 1430 ...................................................................................................1,2,3

12 O.S. § 1431(3)..................................................................................................8

12 O.S. § 1434 (C) ...........................................................................................3,9,18

12 O.S. § 1439(2)................................................................................................7,8

Okla. Stat. tit. 12, §§ 1430 et seq. (OCPA)...............................................................7

Federal Rule of Civil Procedure 12(b)(6) .....................................................1,2,3,5,6,20

28 U.S.C.A. § 2072(b) ...........................................................................................5

OTHER AUTHORITIES

2 Robert D. Sack, Sack on Defamation § 16:2.1 (5th ed. 2017)....................................3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

EIGHT ONE EIGHT, LLC, dba          )
FASSLER HALL, an Oklahoma          )
limited liability company,         )
                                   )
            Plaintiff,             )
                                   )        Case No. 25-cv-00510-CVE-SH
vs.                                )
                                   )
KELLIE GILMORE, an individual,     )
                                   )
            Defendant.             )

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendant, Kellie Gilmore ("Gilmore"), hereby respectfully submits this Reply Brief in Support of her Motion to Dismiss [Dkt. 29] ("Motion") pursuant to the Oklahoma Citizens Participation Act ("OCPA"), 12 O.S. § 1430, *et seq*., and FED. R. CIV. P. 12(b)(6). In support thereof, Gilmore states as follows:

## INTRODUCTION

The Northern District of Oklahoma recently reiterated the OCPA's purpose: "[a]nti-SLAPP laws are 'the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of a legal action.'" *Gillespie v. Dentsply Sirona, Inc.,* No. 23-CV-00395-SEH-CDL, 2025 WL 2901891, at *5 (N.D. Okla. Oct. 10, 2025) (quoting *Krimbill v. Talarico,* 417 P.3d 1240, 1245 (Okla. Civ. App. 2017)). This case exemplifies the very type of litigious antics that the OCPA is designed to prevent.

Fassler, having exorbitant resources to expend on a lawsuit, filed its Amended Complaint [Dkt. 8] against Gilmore for defamation and tortious interference after she posted a TikTok video criticizing Fassler for how it handled her friend, Sarah Jacobs' ("Jacobs") report of a sexual assault

1

against her by a male patron on August 9, 2025.[1] In response, Gilmore sought dismissal of Fassler's Amended Complaint on the basis that her statements are protected free speech. 12 O.S. § 1430, *et seq.*; FRCP 12(b)(6); [Dkt. 29], Motion.

On January 22, 2026, Fassler filed its Response to Defendant's Motion to Dismiss ("Response"). [Dkt. 45], Resp. Fassler's Response attempts to cast Gilmore as a man-hating, profit-driven influencer who posted her TikTok to "target" Fassler. Resp., [Dkt. 45], at 2, 7, 11, 28. Fassler goes as far as to say that Gilmore should not have believed Jacobs' account of the events at Fassler because Jacobs had a one-time sexual encounter *ten (10) years ago* with the Fassler security guard who forcefully removed her from the bar that night. Resp., [Dkt. 45], at 35. These theatrical assertions are nothing more than an attempt to escape accountability through baseless attacks on credibility, a common ploy invoked by those accused of wrongdoing by women. *Shaw v. United States,* 892 F. Supp. 1265, 1275, n. 14 (D.S.D. 1995), *aff'd,* 92 F.3d 1189 (8th Cir. 1996).

Gilmore's Motion [Dkt. 29] and her deposition testimony in this case consistently reflect that she had a good-faith basis in believing Jacobs' account of the events at Fassler; she questioned and further verified Jacobs' account before posting her TikTok; and her TikTok was posted with the intent to warn women about Jacobs reported sexual assault and Fassler's inappropriate response. *See* Ex. **3**, Gilmore Dep., at 74:14–17, 87:13–16, 20–21, 88:2–3, 10–11, 18–20, 89:8–9, 14–15, 97:6–8, 99:11–14, 102:19–21, 103:6–7, 9–14, 137:7–11, 179:22–23. As such, Gilmore's statements in her TikTok video reflect precisely the type of commentary on public concerns that

---

[1] McNellie's Group Revenue and Competitors, Estimated Revenue and Valuation, GROWJO (Jan 25, 2026, at 3:58 PM), https://growjo.com/company/McNellie's_Group.

are safeguarded by free speech protections. *Magnusson v. New York Times,* 2004 OK 53, ¶ 13, 98 P.3d 1076.  Thus, Fassler's claims in its Amended Complaint should be dismissed.

## ARGUMENT

### I.   THE OCPA WARRANTS DISMISSAL OF FASSLER'S CLAIMS

Courts routinely dismiss defamation claims according to long-standing constitutional protections in American jurisprudence. *See, e.g., Brokers' Choice of Am. V. NBC Universal*, 861 F.3d 1081 (10th Cir. 2017) (affirming dismissal on truth and other grounds); *Hogan v. Winder*, 762 F.3d 1096, 1105–1110 (10th Cir. 2014) (affirming dismissal on opinion and other grounds); *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1185 (10th Cir. 2016) (affirming dismissal where plaintiff failed to allege facts supporting falsity). "Unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought— is ordinarily before the judge at the pleading stage. He or she may assess it upon a motion to dismiss, firsthand and in context." 2 Robert D. Sack, Sack on Defamation § 16:2.1 (5th ed. 2017). Fassler's claims warrant dismissal under Rule 12(b)(6) and pursuant to 12 O.S. § 1430, *et seq.,* since Fassler cannot establish a prima facie case by clear and convincing evidence. § 1434(C).

### A.  THE APPLICABILITY OF THE OCPA IN FEDERAL COURT.

Considering this Court's previously expressed reservations concerning the applicability of the OCPA in federal court, Gilmore respectfully addresses (i) the applicability of the OCPA and (ii) further addresses why Fassler fails to establish a *prima facie* case under the OCPA.

#### i.   *Shady Grove* **created a circuit split on anti-SLAPP applicability in federal court.**

In determining whether a state law is substantive or procedural—and thus applicable in federal court—every circuit except the Ninth looks to *Shady Grove. See generally Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393 (2010). That decision yielded no controlling majority opinion; instead, Justice Scalia's plurality and Justice Stevens' concurrence

articulated sharply different reasoning and competing analytical frameworks for resolving state–federal law conflicts in diversity cases. *Shady Grove,* 559 U.S. at 421–28; *Barnett v. Hall, Estill, Harwick, Gable & Nelson*, P.C., 956 F.3d 1228, 1237–1238, n. 5 (10th Cir. 2020). As a result, lower courts have applied *Shady Grove* inconsistently, giving rise to a circuit split—particularly with respect to the applicability of anti-SLAPP statutes. 956 F.3d at 1239.

The Second, Fifth, Eleventh, and D.C. Circuits, applying Scalia's framework, have held that state anti-SLAPP statutes are inapplicable in federal court, while the First and Ninth Circuits, applying Stevens' framework and *Erie*, reached the opposite conclusion.[2] Whereas, six of the twelve Circuits—including the Tenth—have not issued a definitive ruling. *Barnett*, 956 F.3d at 1237–38 (declining to decide the OCPA's applicability in federal court). Instead, the Tenth Circuit indicated that developing decisions from federal district courts and Oklahoma courts will inform its eventual determination on the applicability of the OCPA in federal court. *Id*. at 1239. Since *Barnett*, several courts within the Tenth Circuit have applied anti-SLAPP laws in federal court. *See Lichfield v. Kubler,* No. 2:24-CV-00458-JNP-CMR, 2025 WL 2772468, at *10 (D. Utah Sept. 29, 2025); *Sullivan v. Unified Sch. Dist. No. 512, Johnson Cnty., Kansas,* No. 24-2491-DDC-BGS, 2025 WL 2732589, at *20 (D. Kan. Sept. 25, 2025); *Watson v. Mulcahy,* No. 24-CV-02606-GPG-NRN, 2025 WL 2099991, at *3 (D. Colo. Jan. 31, 2025).

---

[2] **Compare** Circuits holding state anti-SLAPP laws do not apply in federal court. *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019), *as revised* (Aug. 29, 2019) (Fifth Circuit holding); *Carbone v. Cable News Network, Inc.,* 910 F.3d 1345 (11th Cir. 2018) (Eleventh Circuit holding); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (D.C. Circuit holding); *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) (Second Circuit holding); **to** Circuits holding state anti-SLAPP laws do apply in federal court. *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (First Circuit holding); *Clifford v. Trump*, 818 F. App'x 746 (9th Cir. 2020) (*reaffirming U.S. ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963 (9th Cir. 1999)) (Ninth Circuit holding).

4

### ii.    The Tenth Circuit applies Justice Stevens' *Shady Grove* test.

Although the Tenth Circuit has not decided whether the OCPA applies in federal court, it has consistently applied Justice Stevens' framework as the governing test to decide conflicts between state and federal law. *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*, No. CIV-17-003-F, 2018 WL 4861522, at *12, 15 (W.D. Okla. Apr. 30, 2018) (citing *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011)). Critically, this is the same approach the First Circuit uses to apply state anti-SLAPP laws in federal court—and previously, the Western District of Oklahoma held that anti-SLAPP laws apply in federal court using the same analysis. *See Godin*, at *86; *Craig PC Sales & Serv.*, 2018 WL 4861522, at *12.

Particularly, Justice Stevens' test instructs courts to first determine "whether the scope of the federal rule is sufficiently broad to control the issue before the court, thereby leaving room for the operation of seemingly conflicting state law." *Shady Grove*, 559 U.S. at 421 (internal quotations omitted).  If the federal rule controls, the court must next determine whether the application of the federal rule violates the Rules Enabling Act, which means it "effectively abridges, enlarges, or modifies a state-created right or remedy." *Id.* at 422; 28 U.S.C.A. § 2072(b).

Applying Stevens' test, both the First Circuit and the Western District of Oklahoma held that state anti-SLAPP laws apply in federal court. *See Godin*, at *86*; Craig PC Sales & Serv.,* 2018 WL 4861522, at *12. Notably, the Western District held that, while the OCPA and Rule 12(b)(6) conflict, the federal rules violate the Rules Enabling Act because they would abridge or modify the substantive rights as recognized by the Oklahoma Supreme Court, and thus the OCPA should be applied. *Craig PC Sales & Serv.,* 2018 WL 4861522, at *15.

The First Circuit similarly applied Steven's framework but resolved the issue at the first step of the analysis, holding that Rules 12 and 56 are not sufficiently broad to govern Maine's anti-SLAPP procedures. *Godin*, 629 F.3d at 88. Because it held that the federal rules were not

sufficiently broad enough to cover the issue, the court did not consider whether they violated the Rules Enabling Act. *Id*. Under either approach—the Western District of Oklahoma's or the First Circuit's—the result is the same: State anti-SLAPP laws apply in federal court under Justic Stevens framework. Additionally, the Ninth Circuit—the largest judicial circuit—applies state anti-SLAPP laws in federal court under the *Erie* approach. *Clifford,* 818 F. App'x at 747; *see generally Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

### iii. Most courts in the Tenth Circuit apply state anti-SLAPP laws.

Reviewing federal decisions is directly relevant to the OCPA's applicability, given the *Barnett* Court's decision to observe how anti-SLAPP cases develop in federal court before deciding the issue. *See Barnett*, 956 F.3d at 1239 ("It makes sense to wait to decide the issue until we must do so, perhaps after helpful development of both federal law and Oklahoma case law interpreting the statute."). To date, Oklahoma federal courts—both before and after *Barnett*—have not held that the OCPA is *inapplicable* in federal court but have consistently declined to resolve the question.[3] Before *Barnett*, however, the Western District in *Craig* conducted a thorough analysis under Justice Stevens' framework and held that the OCPA applies, as discussed *supra*. 2018 WL 4861522, at \*15. After *Barnett* questioned the OCPA's applicability in federal court, the Western District again held that the OCPA applies, relying on its earlier analysis in *Craig*. *See KLX Energy Servs., LLC v. Magnesium Mach., LLC,* 521 F. Supp. 3d 1124, 1130–1131 (W.D. Okla. 2021).

---

[3] While recent Oklahoma federal rulings are not definitive on the issue, none have held the OCPA is inapplicable, resolving cases instead under Rule 12(b)(6). *See Westwin Elements, Inc. v. CVMR Corporation, Kamran Khozan, Michael Hargett, John Finley, and Sydney Lu*. No. CIV-25-19-D, 1, 6 n.3 (W.D. Okla. 2025) (questioning the OCPA's federal applicability but dismissing the claims under Rule 12(b)(6)); *Gallegly v. Cordell Mem'l Hosp. Found.*, No. CIV-22-817-R, 2022 WL 16936049, at \*2 (W.D. Okla. Nov. 14, 2022) (opting not to rule on the defendants' OCPA argument because the plaintiff failed to state a plausible defamation claim under Rule 12(b)(6)).

6

Significantly, most of the district courts within the Tenth Circuit conclude that state anti-SLAPP laws apply in federal court. *See Lichfield,* 2025 WL 2772468, at \*10 (*pending appeal*) (granting defendant's motion to dismiss under California's Anti-SLAPP statute); *Sullivan,* 2025 WL 2732589, at \*20 (granting defendant's motion to dismiss under Kansas's Anti-SLAAP statute); *Watson*, 2025 WL 2099991, at \*3 (providing that Colorado federal courts should apply the substantive aspects of Colorado's anti-SLAPP statute in federal court).[4]

Accordingly, Gilmore respectfully requests that the Court apply Justice Stevens' framework and, consistent with the First Circuit, the Ninth Circuit, and many Tenth Circuit district courts, hold that the OCPA applies in federal court.

### B. Fassler relies on inapposite cases and misapplies § 1439(2) in support of its argument that the OCPA does not apply in federal court.

Fassler relies on *Klocke* and *Abbas* to support its claim that the OCPA does not apply. Resp., [Dkt. 45], at 20–21. However, *Klocke* and *Abbas* are not persuasive because both courts applied Justice Scalia's framework to reach their holdings. *Klocke*, 936 F.3d at, 244–45; *Abbas*, 783 F.3d at 1333. Adopting the analyses in *Klocke* and *Abbas* would thus conflict with the Tenth Circuit's directive to apply Justice Stevens' test when resolving state-federal law conflicts.[5]

---

[4] The Tenth Circuit only found New Mexico's anti-SLAPP law inapplicable in federal court because it is purely *procedural*, which *Barnett* noted was not controlling precedent as to the OCPA. *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668–69, 673 (10th Cir. 2018); *Barnett*, 965 F.3d at 1237. Wyoming is the only court within the Tenth Circuit that has not addressed the issue of anti-SLAPP applicability in federal court.

[5] While *Barnett* mentioned *Abbas* as generally persuasive on this issue, it simultaneously acknowledged that the D.C. Circuit in *Abbas* follows the plurality opinion in *Shady Grove*. 956 F.3d at 1237. This distinction is critical because the Tenth Circuit follows Justice Stevens' concurring opinion. *Barnett* specifically emphasized that *Abbas*'s analysis under the second step of the *Shady Grove* test—whether the federal rules violate the Rules Enabling Act—differs from the Tenth Circuit's approach, since *Abbas* did not follow Justice Stevens' method, whereas the Tenth Circuit is "bound by Tenth Circuit precedent which has said that Justice Stevens' opinion controls the analysis in that question." *Id*. at 1238 n.5.

Fassler also purports that the Ninth Circuit in *Travelers Casualty Insurance Co. of America v. Hirsh*, **questioned** its prior anti-SLAPP precedent. Resp., [Dkt. 45], at 21. However, that opinion from 2009 preceded the Ninth Circuit's 2020 opinion in *Clifford v. Trump*, reaffirming the Ninth Circuit's long-standing precedent of applying state anti-SLAPP laws. *Clifford,* 818 F. App'x at 747 (*reaffirming U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)). Moreover, the *Clifford* Court applied Texas anti-SLAPP laws despite acknowledging that the Fifth Circuit does not apply anti-SLAPP in federal court. *Id.* at 747.

Fassler further asserts the OCPA should not apply under 12 O.S. § 1439(2). Resp., [Dkt. 45], at 21–22. Fassler's reliance on § 1439(2) is misplaced for two reasons. First, Gilmore's TikTok video does not involve selling products, and she did not post her video with a motive of financial gain. Ex. **3**, Gilmore Dep. at 40:2–6, 74:14–17, 87:13–16, 20–21, 88:2–3, 10–11, 18–20, 89: 8–9, 14–15, 97:6–8, 99: 11–14, 102:19–21, 103:6–7, 9–14, 137, 10–11, 179:22–23; [Dkt. 29-2] at 8–9. Second, § 1439 requires the "intended audience" to be "an actual or potential buyer or customer." Gilmore's video was intended for the public at large, specifically women. In *KLX Energy*, the court found the § 1439 exclusion inapplicable where the intended audience was "arguably the public-at-large," which parallels this case. *KLX Energy Servs., LLC*, 521 F. Supp. 3d at 1133. Fassler's argument that the OCPA does not apply due to the § 1439 commercial speech carve-out therefore fails.

## II.    FASSLER'S CLAIMS FAIL UNDER THE OCPA

The OCPA protects against lawsuits aimed at chilling First Amendment rights. *Sw. Orthopaedic Specialists, P.L.L.C. v. Allison*, 2018 OK CIV APP 69, 439 P.3d 430, 434. Accordingly, the Court must first determine whether defendant's statement(s) regard a matter of public concern. *Id*. at 435; 12 O.S. § 1431(3). Fassler concedes this step is satisfied. Resp., [Dkt.

45], at 23, n.14. Thus, the burden shifts to Fassler to make a clear and specific showing of the *prima facie* validity of its case. 12 O.S. § 1434(C).

### A. Fassler fails to meet its burden of establishing a *prima facie* case.

To recover for defamation, the plaintiff must prove: a false, defamatory statement about the plaintiff, an unprivileged third-party publication, fault at least amounting to negligence, and either actionability of the statement or special damages. *Yates v. Gannett Co.,* 2022 OK CIV APP 41, ¶ 14, 523 P.3d 69, 76.

### i.        False statement

Fassler claims Gilmore's statements—that Jacobs was dragged by her throat and that Fassler condones sexual assault—are false and defamatory; however, these statements are true and/or Gilmore's opinion.

To meet its burden, Fassler must prove that Gilmore's statements are not only false, but that they are *materially false*; that is, "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth." *Brokers' Choice of Am.*, 861 F.3d at 1107. "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." *McGhee,* at ¶ 8, 115 P.3d at 898 (citations omitted). "A statement is substantially accurate if its 'gist' or 'sting' is true, that is, if it produces the same effect on the mind of the recipient which the precise truth would have produced." *Id.* (citations omitted).

### a. Gilmore's statements are substantially true.

The *factual statements* by Gilmore—not her intertwined opinions—include: Jacobs alleged to be sexually assaulted by a male patron at Fassler; Jacobs engaged her assailant and threw a drink at him; Fassler security dragged Jacobs out of the bar by her throat; and Fassler denied Jacobs' reentry into Fassler that evening. [Dkt. 45-7], Gilmore Dep. Ex. 7, p. 2, l. 5–14]. These statements

9

were corroborated by Jacobs *before* Gilmore posted her video and were reiterated by Jacobs during her deposition testimony. Jacobs Aff., [Dkt. 29-1], at ¶ 14; Gilmore Aff, [Dkt. 29-2], at ¶¶ 2–10; Ex. **4**, Jacobs Dep., at 22:1–26:25; ("I felt like I was grabbed by my neck during the incident and then was taken out of the bar very roughly"). Fassler's version of the events are substantially similar: Jacobs reported having been sexually assaulted by a male patron at Fassler to a bartender; Jacobs was told to alert security; Jacobs physically engaged her assailant; Fassler security forcibly removed Jacobs from the bar; and Fassler denied Jacobs' reentry that evening. [Dkt. 8] at ¶¶ 7–11. Both parties' factual assertions are materially alike; thus, Gilmore's statements are substantially true—not materially false. *McGhee,* at ¶ 8, 115 P.3d at 898.

The only real discrepancy is the manner of Jacobs' removal. Fassler relies on cherry-picked, grainy video footage that does not clearly establish the truthfulness of Fassler's version of Jacobs' removal versus Gilmore's version. *See* [Dkt. 45-2], Ex. 9–13 (security footage) of Jacobs. Dep. Contrarily, the footage shows Jacobs being forcibly removed, not "professionally escorted" by her wrists as Fassler alleges in its Amended Complaint. [Dkt. 8], at ¶ 11. Accordingly, Fassler's video footage depicting Jacobs being grabbed and pushed out of Fassler "produce[s] the same effect on the mind of the recipient which the precise truth would have produced"—Jacobs was manhandled out of Fassler.[6] *McGhee*, at ¶ 8, 115 P.3d at 898 (citations omitted). As such, Gilmore's throat statement is substantially true under the law. *Id.*

Fassler's Response contends that Gilmore's statements about Fassler condoning sexual are not substantially true but fails to provide any on-point authority. Resp., [Dkt 45], at 24–25. Conversely, Gilmore's statements on Fassler condoning sexual assault are pure opinion as those

---

[6] Photos of Jacobs's bruises show the excessive force used by Fassler's security—whether on her throat, shoulders, arms or wrists—any reasonable viewer would describe this as use of excessive force. [Dkt. 29-2] at 8–9.

statements are not verifiable. Resp., [Dkt. 45], at 9–10, ¶ 14; *Tilton v. Capital Cities/ABC Inc.,* 905 F. Supp. 1514, 1528 (N.D. Okla. 1995), *cert. denied,* 519 U.S. 1110 (1997).

### b.  Fassler's claim still fails, regardless of any purported omissions by Gilmore.

Fassler alleges that Gilmore's statements cannot be substantially true because she omitted supposed key facts. Resp., [Dkt. 45], at 11, 12, 25, 26. Specifically, Fassler asserts that Gilmore omitted (1) that Jacobs reported the sexual assault to the bartender, (2) the bartender instructed Jacobs to alert security, and (3) that Jacobs hit her assailant. Resp., [Dkt. 45], at 12, ¶ 19.[7] This "omission" argument overlooks Tenth Circuit authority rejecting the notion that a true statement becomes materially false simply because certain facts were omitted:

> [T]he omission of additional favorable information from an otherwise true publication does not render a statement materially false. '[T]he First Amendment prohibits a rule that holds a media defendant liable for broadcasting truthful statements and actions because it failed to include additional facts which might have cast plaintiff in a more favorable or balanced light.

*Brokers' Choice of Am.,* 861 F.3d at 1108 (citations omitted). The Tenth Circuit further opined that "as long as the matter published is substantially true, the defendant is constitutionally protected from liability based on falsity, regardless of its decision to omit facts that may place the plaintiff under less harsh public scrutiny." *Id* (cleaned up).

Additionally, Fassler's reliance upon *SSS Fence, LLC v. Pendleton* to support its omission argument is misplaced because the *SSS Fence* Court did not address omitted facts in the context

---

[7] Fassler mischaracterizes Jacobs' testimony when it provides that she *admitted* that Gilmore's post omitted certain *key* facts. Resp., [Dkt. 45], at 12, ¶ 19. Jacobs testifies that Gilmore's post accurately portrays the series of events as they happened to her. *See* Ex. **4**, Jacobs Dep. at 52: 6–9. The portions in which Jacobs indicated that something was omitted were immaterial, and contrary to Fassler's assertions, Jacobs never expressly or implicitly suggested that Gilmore omitted key or material facts from her post. *Id*. at 34: 8–23; 44: 17–21.

of falsity or substantial truth, but instead, only addressed omissions in the context of protected opinion speech. *SSS Fence, LLC,* at ¶ 13–16, 528 P.3d at 308–310.

### c.   Most of Gilmore's statements in her TikTok video are opinions.

Judgmental, opinionative, or predicative statements are not defamatory because they are not verifiable as being either true or false. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990); *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983); *Tilton,* 905 F. Supp. 1514 (N.D. Okla. 1995). "Where the tone of a piece is 'pointed, exaggerated and heavily laden with emotional rhetoric and moral outrage,' readers are notified 'to expect speculation and personal judgment.'" *Peterson v. Grisham*, 2008 WL 4363653, at *3 (E.D. Okla. Sept. 17, 2008), *aff'd*, 594 F.3d 723 (10th Cir. 2010) (citation omitted).

Except for Gilmore's recantation of the factual events conveyed by Jacobs, all remaining statements are protected opinion. *See* [Dkt. 29], at 16. In context, these statements lack defamatory meaning and instead constitute subjective expressions of opinion, conjectural hyperbole, and conclusions drawn from disclosed facts—speech protected under Oklahoma law and the First Amendment. *See Magnusson*, at ¶ 13, 98 P.3d at 1076 ("[S]tatements of pure opinion—based on stated facts or on facts known by the parties or assumed by them to exist—as a matter of constitutional law, enjoy absolute immunity protected both by the First Amendment and by art. 2, § 22 of the Oklahoma Constitution."). Viewed as a whole, Gilmore's statements express moral disapprobation that cannot be proved true or false. *Id.*, at ¶ 13, 98 P.3d at 1075–1076 n.19. They are precisely the type of exaggerated criticism and rhetorical hyperbole our society has chosen to protect in free and heated debate on matters of social concern. *Rinsley*, 700 F.2d at 1309; *see also Milkovich*, 497 U.S. at 20.

The factual premises underlying Gilmore's opinions were fully disclosed in her video, allowing viewers to draw their own conclusions. *See* [Dkt. 45-7], Gilmore Dep. Ex. 7. Gilmore

described the incident at Fassler, as relayed by Jacobs, *id.* at 2:5–15, and then offered constitutionally protected opinions regarding Fassler's safety, its handling of the incident, and whether women should patronize the establishment. Such commentary—opinions about the legal and moral significance of disclosed conduct, even if disputed—is not actionable as defamation. *See Nunes*, 299 F. Supp. 3d at 1232.

Moreover, Gilmore admits in her TikTok video that this incident happened to her friend. *See* [Dkt. 45-7], Gilmore Dep., Ex. 7 at 2: 5–6. Given this bias-disclosure, viewers would interpret Gilmore's statements as her subjective viewpoint. *Peterson*, 2008 WL 4363653, at *3 ("even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view"). Particularly where—as here—the storyteller had a friend who was personally involved in the incident, viewers fully expect he or she is biased, and "language which generally might be considered as statements of fact may well assume the character of opinion." *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401–1403 (1999).

Additionally, Gilmore's general statements opining about how Fassler handled the incident or "condoning sexual assault" are protected speech. While "[a]ccusing an individual of committing a specific criminal act is typically an assertion of fact," like here, "a speaker's use of words that may carry criminal connotations do not always constitute assertions of fact." *Lichfield*, 2025 WL 2772468, at *5 (citations omitted). Gilmore did not accuse Fassler of a specific crime; rather, her statements reflect her opinion criticizing the way Fassler treated Jacobs. After sharing an accurate depiction of Jacob's experience, Gilmore expressed her emotional reaction, cautioning other women. Couched as her visceral reaction to her friend's experience, a reasonable viewer would understand these remarks as hyperbolic expressions of opinion, not allegations of specific criminal conduct, contrary to Fassler's characterization. And hyperbolic statements expressing a speaker's subjective

13

beliefs are not actionable even if they appear to accuse the plaintiff of crimes. *See Milkovich,* 497 U.S. at 16–17 (citation omitted) ("traitor" used "in a loose, figurative sense" and was "merely rhetorical hyperbole"); *Westmont Residential LLC v. Buttars*, 2014 UT App 291, 340 P.3d 183, 189 (while "'crooks' can carry a criminal connotation, in the context of Defendants' online review" it "is clearly not being used in this manner" and "was no more than rhetorical hyperbole") (citation omitted); *Nunes,* 299 F. Supp. 3d at 1231–32 (comments that plaintiff needed to consult a lawyer about accusations of harassment "did not make factual assertions of specific criminal conduct" and was "no more than rhetorical hyperbole").

Lastly, Fassler cites *SSS Fence* to argue Gilmore's statements were not protected opinion because she omitted facts. *SSS Fence* holds that a defendant may be liable if a derogatory opinion implies undisclosed defamatory facts. *SSS Fence, LLC*, at ¶ 14, 528 P.3d at 309. This is not the case for Gilmore, as all material facts underlying her opinions were disclosed in her TikTok. The facts that Fassler claims as omissions—reporting the assault to a bartender, being directed to security, hitting her assailant—are not material, unlike those omissions in *SSS Fence*. *Id*. at ¶ 15, 528 P.3d at 309 (omitting key facts in their statements about a fence, like misidentifying the true customer and the fence's quality, and selecting photos that omit the full fence and its value relative to the purchase price).

Notably, in her video, Gilmore explicitly states that Jacobs "throws his drink in his face and starts yelling at him," [Dkt. 45-7], Gilmore Dep., Ex. 7, at 2: 11–12, making clear an altercation occurred, contrary to Fassler's claim of omission. Presenting facts differently is not an omission. And the only other omission—Jacobs reporting the assault to a bartender—is immaterial and arguably reflects more poorly on Fassler, as the bartender failed to stop making drinks to assist Jacobs.

### ii.    Negligence and/or malice

Like the first element of its defamation claim, Fassler cannot establish that Gilmore acted with either negligence or actual malice in posting her TikTok video. Thus, its claim fails.

Fassler contends that Gilmore acted negligently by failing to call Jacobs and Fassler before posting her TikTok video. Resp., [Dkt. 45], at 27. However, this argument imposes a duty on Gilmore that the law does not support. The law does not require her to call Fassler; rather, the law requires Gilmore to act with "the degree of care which ordinarily prudent persons, engaged in the same kind of business, customarily have exercised[.]" *Nelson v. Am. Hometown Publ'g, Inc.,* 2014 OK CIV APP 57, ¶ 40, 333 P.3d 962, 973. Gilmore satisfied her duty of care by contacting Jacobs to verify information, asking questions, and confirming Jacobs' story with Jacobs before posting the TikTok video.[8] Jacobs Aff., [Dkt. 29-1], at ¶ 14; Gilmore Aff, [Dkt. 29-2], at ¶¶ 2–10; Ex. **4**, Jacobs Dep., at 22:1–26:25. These steps reflect the diligence and prudence of an ordinary person. *Nelson*, at ¶ 40, 333 P.3d at 973. Further, Gilmore had a good-faith basis to believe Jacobs based on their friendship, and on the absence of any reason to question Jacobs' account of the events, which alone ends the analysis. *See Jankovic v. Int'l Crisis Grp.,* 822 F.3d 576, 595 (D.C. Cir. 2016) ("Even where doubt-inducing evidence could be discovered, a publisher may still opt not to seek out such evidence and may rely on an informed source, so long as there is no 'obvious reason to

---

[8] Fassler's submitted Affidavit of Brian Fontaine makes it appear that Gilmore posted her TikTok several days following the incident on August 9, and after Fassler reached out to Jacobs. [Dkt. 45-1]. In ¶ 5, Fontaine states that Fassler met with Jacobs on **August 13, 2025**, to show her video footage and discuss next steps, then claims, "[b]ut shortly afterward, when Gilmore inserted herself into the picture, the situation began to turn for the worse." *Id*. Gilmore's video, however, was posted on August 9, before Jacobs met with Fassler's representatives two days later. *Id*. at ¶¶ 6, 8; Gilmore Aff, [Dkt. 29-2], at ¶¶ 1, 8–10.

doubt' that source."). Gilmore is not a journalist or reporter, and imposing a heightened duty, as Fassler attempts to do, is improper.[9]

To support its negligence claim, Fassler also references purported death threats to security guards after Gilmore's video. Resp., [Dkt. 45], at 27. Gilmore, however, provided no identifying information about *any* of Fassler's security guards, and despite repeated assertions, Fassler has substantiated only one threatening message. Ex. **4**, Jacobs Dep., 53:7–54:17.

Although Fassler characterizes itself as a private figure, it briefs the public-figure malice standard, which also fails. Malice requires proof that a defendant acted with knowledge of falsity "or with reckless disregard of whether it was false or not." *Krimbill,* at ¶ 56, 417 P.3d at 1253. Fassler argues reckless disregard based on Gilmore's failure to call Jacobs. Resp., [Dkt. 45], at 28. The law requires reasonable verification, not a specific method, and Gilmore satisfied that standard, as discussed above. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (holding that a "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.").

Fassler's remaining arguments for malice are unconvincing and overstated. Fassler relies on an intimate relationship between Jacobs and a Fassler's security guard from *ten (10) years ago* and characterizes Gilmore as a "misandrist" as a calculated attempt to suggest bias—these

---

[9] Fassler also asserts that Gilmore confuses her duty to Fassler with her duty to Jacobs. Resp., [Dkt. 45], at 43. Fassler cites *Bradford Sec. Processing Servs. Inc. v. Plaza Bank & Trust*, which defines the negligence standard as "the conduct of an ordinarily prudent man based upon the dangers he should reasonably foresee to the plaintiff or one in his position in view of all the circumstances of the case such as to bring the plaintiff within the orbit of defendant's liability." 1982 OK 96, ¶ 10, 653 P.2d 188, 191. Gilmore met this standard: she messaged Jacobs after learning of the incident, drafted the video, sent the draft to Jacobs to confirm facts, and asked follow-up questions before posting. There is no confusion about the recipient of her care; these steps ensured the truth and accuracy of Jacobs' experience at Fassler, satisfying the duty of care owed to Fassler as well as to Jacobs.

16

contentions are unpersuasive and offensive. In support, Fassler cites to a video that Gilmore posted five (5) months after the TikTok at issue was posted with a voiceover stating, "I consider myself a misandrist." Resp., [Dkt. 45], at 7, ¶ 8. The voice is not Gilmore's, and there is no evidence that she acted out of alleged hatred toward men—an apparent effort to malign her. Fassler further attempts to show malice by pointing to Gilmore's "admitted positive experiences" at Fassler. Resp., [Dkt. 45], at 28. Past positive experiences have no bearing on the issue here—the events on August 8 and 9—and Gilmore's testimony on Fassler's reputation further illuminates why she accepted Jacob's account as true because why would she "target" a bar she enjoyed. Gilmore Aff., [Dkt. 29-2] at ¶ 7.

Fassler's claim of financial motive is equally baseless. Resp., [Dkt. 45], at 28. Fassler notes that Gilmore profited from her video to suggest an improper motive, but Fassler conflates outcome with purpose. Resp., [Dkt. 45], at 2. Gilmore's purpose was to raise awareness and warn women, and the trivial $64 earned—that she did not keep—undermines any suggestion of profit-driven malice. Ex. **3**, Gilmore Dep. at 40:2–6, 74:14–17, 87:13–16, 20–21, 88:2–3, 10–11, 18–20, 89: 8–9, 14–15, 97:6–8, 99: 11–14, 102:19–21, 103:6–7, 9–14, 137, 10–11, 179:22–23; [Dkt. 29-2] at 8–9.

Curiously, Fassler contends that Gilmore posts "controversial content" to imply a nefarious motive. Resp., [Dkt. 45], at 2. When asked about her brand, Gilmore testified she is a "[p]lus size influencer, plus size creator, who makes positivity content and uplifts women." Ex. **3**, Gilmore Dep. at 8:10–12. A review of Gilmore's TikTok page reflects her typical curvy-girl content which, coincides with Gilmore's deposition testimony and is a far cry from "controversial."

**B. Gilmore has established a valid defense by a preponderance of the evidence.**

Even if Fassler establishes a *prima facie* case by clear and convincing evidence, the OCPA requires dismissal if Gilmore can establish a valid defense by a preponderance of the evidence. 12 O.S. § 1434(D).

Fassler correctly notes that "disputed questions of material fact cannot be resolved in an OCPA dismissal proceeding." *Krimbill,* at ¶ 21. However, there are no disputes here. Both parties agree that Jacobs alleged sexual assault at Fassler's bar; confronted her assailant; was removed from the bar by Fassler's security; and denied reentry. *Compare* [Dkt. 45-7], Gilmore Dep. Ex. 7, at 2:5-14 *to* [Dkt. 8], ¶¶ 7–11. Fassler objects to Gilmore's statement about *how* security removed Jacobs. Resp., [Dkt. 45], at 4, ¶ 4. Yet Fassler's own evidence, at the very least, shows Jacobs being forcefully removed, producing the same effect on the recipient. *McGhee,* at ¶ 8, 115 P.3d at 898; [Dkt. 45-2], Ex. 9–13 (security footage) of Jacobs. Dep; *see also* discussion *supra*, Section III(A)(i)(b). And while Fassler takes issue with Gilmore's purported omission that Jacobs reported the assault to the bartender, was instructed to alert security, and then hit her assailant, Resp., [Dkt. 45], at 12, ¶ 19, these facts are immaterial per Section II(A)(i)(b). Because the throat statement is substantially true, and all other statements are protected opinion, no defamation claim exists.

Even if the Court found the falsity of Gilmore's statements disputed, dismissal is warranted under the good-faith belief defense. "If the person passing on the information has a good faith belief in its truth, he is shielded from liability for defamation, even if a more prudent person would not have reported it or the information turns out to be false." *Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 687 N.Y.S.2d 330 (1999). Gilmore had no reason to doubt Jacobs and believed her to be credible. Gilmore Aff., [Dkt. 29-2] at ¶ 6; Ex. **3**, Gilmore Dep. at 60:25, 61:1–4. Gilmore met Jacobs approximately five (5) years ago in a "women support group" that focuses on topics as

18

"benign as fashion advice to as serious as how to leave a domestic violence situation." Ex. **4**, Jacobs Dep. at 12:8–17. Gilmore has "no reason to not [] believe Sarah." Ex. **3**, Gilmore Dep. at 52:1–2. Reinforcing her belief as to the accuracy of her TikTok video, the comments on the video corroborated the events depicted, [Dkt. 29-2], at 10–20, and Fassler did not contact her to challenge or dispute the video until filing this lawsuit. In the absence of any prior objection or contrary indication, there was no reason for Gilmore to doubt the truthfulness of Jacobs's version of the events. Jacobs Aff., [Dkt. 29-1], at ¶ 14; Gilmore Aff, [Dkt. 29-2], at ¶¶ 2–10; Ex. **3**, Gilmore Dep. at 49:11–12; 52:1–2. Thus, the good faith belief defense warrants dismissal.

### III.    FASSLER'S DUPLICATIVE TORT CLAIMS SHOULD BE DISMISSED.

Fassler's remaining tort claim for tortious interference is duplicative of its defamation claim and likewise fails. "A plaintiff may not attempt an end-run around First Amendment structures protecting speech by instead suing for defamation-type damages under non-reputational tort claims." *Lichfield*, 2025 WL 2772468, at 8. The tortious interference claim is merely a repackaging of Fassler's defamation claim. Indeed, it is based on the same statements at issue in the defamation claims and, as such, cannot survive if the defamation claim fails. Nonetheless, Fassler cannot establish tortious interference for the reasons it cannot show Gilmore interfered with an (i) existing business or contractual right and (ii) that Gilmore acted with malice.[10]

Oklahoma law holds that protected relationships for tortious interference are limited to "those businesses and customers wherein a relationship was ongoing and anticipated to continue into the future." *Autry v. Acosta, Inc.*, 2018 OK CIV APP 8, ¶ 32, 410 P.3d 1017, 1024; *see also Allen v. IM Sols., LLC*, 94 F. Supp. 3d 1216, 1222 (E.D. Okla. 2015) ("a hope or wish is not

---

[10] Fassler did not plead tortious interference with prospective economic advantage in its Amended Complaint [Dkt. 8] and cannot raise it now; in any event, it fails for lack of malice.

sufficient to allege a prospective business relationship"). Bar patrons' freedom to visit multiple establishments defeats any claim of exclusivity or expectation of continued patronage. Tortious interference also requires "an existing business relationship or prospective relationship with an identifiable class of third persons." *Allen*, 94 F. Supp. 3d at 1222 (holding that consumers who visit the plaintiff's websites do not create a sufficient expectancy in a business relationship for a tortious interference claim). Akin to consumers, bar customers do not create such identifiable expectancies. Moreover, Fassler has not—and cannot—show that Gilmore's TikTok *caused* loss of business. Any alleged loss attributable to Gilmore is speculative, at best, especially given that Fassler was in the news for a stabbing soon after Gilmore's post.[11]

Further, a key element of tortious interference is that "[t]he interference must be the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others' prospective economic business advantage." *Loven v. Church Mut. Ins. Co.*, 2019 OK 68, ¶ 20, 452 P.3d 418, 421. As stated ad nauseam, Gilmore's motive in posting the video was to warn women about what happened to Jacobs and how Fassler handled the situation. Ex. **3**, Gilmore Dep. at 74:14–17, 87: 13–16, 20–21, 88:2–3, 10–11, 18–20, 89: 8–9, 14–15, 97:6–8, 99: 11–14, 102:19–21, 103:6–7, 9–14, 137, 10–11, 179:22–23; [Dkt. 29-2] at 8–9. Malice requires a showing of more. *Loven*, at ¶ 19, 452 P.3d at 425.

### CONCLUSION

For the reasons outlined above, Defendant Kellie Gilmore respectfully requests that her Motion [Dkt. 29] be granted, dismissing *in toto* the claims against Defendant as they fail under both the OCPA and the Rule 12(b)(6) pleading standards.

---

[11] *Police Investigate Downtown Tulsa Stabbing*, FOX23 NEWS (Nov. 17, 2025), https://www.fox23.com/news/police-investigate-downtown-tulsa-stabbing/article_19a5f9d9-d702-499c-9998-1991cd709b05.html.

Respectfully submitted,


 *s/*Taylor K. Pepperworth
J. Schaad Titus, OBA #9034
Barry R. Reynolds, OBA #13202
Ashley F. Vinson, OBA #34812
Taylor K. Pepperworth, OBA #36747
**TITUS HILLIS REYNOLDS LOVE**
15 East 5th Street, Suite 3700
Tulsa, Oklahoma  74103
 (918) 587-6800   FAX:  (918) 587-6822
stitus@titushillis.com
reynolds@titushillis.com
avinson@titushillis.com
tpepperworth@titushillis.com
*Attorneys for the Defendant,*
*Kellie Gilmore*


## CERTIFICATE OF SERVICE


I hereby certify that on this  5th   day of February, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

John M. Hickey
jhickey@hallestill.com

Tyler A. Stephens
tstephens@hallestill.com


 s/Taylor K. Pepperworth
 Taylor K. Pepperworth

21